## KNAUTH, NACHOD & KÜHNE v. UNITED STATES (No. 1792).[1]

1. CONSTRUCTION, PARAGRAPHS 368 AND 369, TARIFF ACT of 1913—AIDED BY HISTORY OF PARAGRAPHS—"INDIA RUBBER"—"HARD RUBBER."

　　The language of successive tariff acts shows that Congress has regarded india rubber and hard rubber as different things for tariff purposes. These two expressions, occurring in paragraphs 368 and 369, tariff act of 1913, respectively, are construed to be different things.

2. HARD RUBBER DRUGGISTS' SUNDRIES.

　　Syringes, tubes, combs, and breast pumps in chief value of hard rubber are dutiable as "manufactures of * * * vulcanized india rubber, known as 'hard rubber'" (par. 369, tariff act of 1913), and not as "manufactures of india rubber * * *, commonly known as druggists' sundries" (par. 368).

United States Court of Customs Appeals, May 14, 1917.

APPEAL from Board of United States General Appraisers, Abstract 40301.

[Affirmed.]

. *Comstock & Washburn (Albert H. Washburn* and *Henry J. Rode* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General (*Thomas J. Doherty* and *Charles D. Lawrence,* special attorneys), for the United States.

---

[1] T. D. 37220 (32 Treas. Dec., 614).

[Oral argument May 4, 1917, by Mr. Washburn and Mr. Doherty.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise in question in this case consists of certain syringes composed of glass and hard rubber, the latter of chief value, tubes composed wholly of hard rubber, combs composed of hard rubber, and breast pumps of hard rubber, which were assessed for duty at the rate of 25 per cent ad valorem under paragraph 369 of the act of 1913 as "manufactures of vulcanized india rubber, known as 'hard rubber.'" The merchandise is claimed to be dutiable at only 15 per cent ad valorem under paragraph 368 of the act.

The material portions of these two paragraphs we quote:

368. Manufactures of bone, chip, grass, horn, india rubber, or gutta-percha, * * * or of which any of them is the component material of chief value, not otherwise specially provided for in this section, shall be subject to the following rates: Manufactures of india rubber or gutta-percha, *commonly known as druggists' sundries*, 15 per centum ad valorem; manufactures of india rubber or gutta-percha, not specially provided for in this section, 10 per centum ad valorem * * *. [Italics ours.]

369. * * * Manufactures of * * * vulcanized india rubber, known as "hard rubber," or of which these substances or any of them is the component material of chief value, not specially provided for in this section, 25 per centum ad valorem * * *.

The sole question is whether manufactures of india rubber known as druggists' sundries includes articles of vulcanized india rubber, known as hard rubber. This question is solved by ascertaining the meaning attached to the term "vulcanized india rubber, known as 'hard rubber'" in the paragraph quoted.

"Hard rubber" is defined by lexicographers as "a form of vulcanized rubber chemically combined with sulphur and subjected to heat; useful as an insulator in electrical apparatus and in the manufacture of buttons and many other articles." (Standard Dictionary, edition 1913.)

This definition indicates that hard rubber is a form of india rubber, but it is a processed india rubber, with which sulphur is combined and treated in a manner which results in a marked change in its consistency. It is easily distinguished from ordinary india rubber and apparently Congress has so distinguished it for a long period of time. The act of 1890 contains these two paragraphs:

Paragraph 460. Manufactures of bone, chip, grass, horn, india rubber, * * * not specially provided for in this act, thirty per centum ad valorem.

Paragraph 461. Manufactures of * * * gutta-percha, vulcanized india rubber, known as hard rubber, * * * not specially provided for in this act, thirty-five per centum ad valorem.

The act of 1894 was substantially the same, as were also the acts of 1897 and 1909. So that in tariff nomenclature india rubber and vulcanized india rubber, known as hard rubber, were distinct. The one

term did not mean what the other did as the terms were employed by Congress.

Again in 1913 the provision for "vulcanized india rubber known as 'hard rubber'" was, continued, and the presumption is irresistible that the term was used in the same sense as formerly, unless there be something in paragraph 368 to indicate a change of purpose in that regard. We think no such change of purpose was indicated. The first relevant provision of paragraph 368 is for manufactures of india rubber or gutta-percha. Gutta-percha is now lifted out of its association with vulcanized india rubber known as hard rubber and placed with india rubber. *India rubber*, however, is still in the same contrast with *hard rubber* as in the previous acts. Had the provision stopped here it would hardly be contended but that the same meaning and none other attached to the phrase "manufactures of india rubber" as was given it under the prior acts.

An analysis of the paragraph discloses that the provision is restricted within these limits. It employs the precise language of the former acts, with the addition of gutta-percha thereto—"manufactures of india rubber not otherwise provided for shall be subject to the following rates." Then after a colon the term is repeated—"manufactures of india rubber * * * commonly known as *druggists' sundries*," and "manufactures of india rubber * * * *not specially provided for*." This language is obviously employed for the purpose of dividing the same merchandise provided for in previous acts under the cognate provision into two classes for the purpose of fixing different rates for each, and not for the purpose of enlarging the term "manufactures of india rubber" to include manufactures of india rubber which would not otherwise fall within that term as used in former acts, which term, as we have seen, applies to different merchandise than that described as hard rubber in the succeeding section.

The Board of General Appraisers reached the conclusion above indicated, and their decision overruling the protest is *affirmed*.