(C.D. 3245)

ARDALT, INC. v. UNITED STATES

United States Customs Court, First Division

(Decided January 4, 1968)

*Siegel, Mandell & Davidson* (*Murray Sklaroff* of counsel) for the plaintiff.
*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before WATSON and BECKWORTH, Judges, and OLIVER, Senior Judge.

OLIVER, Judge: In this proceeding we are asked, in effect, to review our decision reached in *The Keepnews Co.* v. *United States*, 53 Cust. Ct. 321, Abstract 68922. The parties have submitted on the basis of a stipulation which reads in pertinent part as follows:

IT IS STIPULATED AND AGREED by and between counsel for the plaintiff and the Assistant Attorney General for the United States:

1. That the merchandise in issue consists of colored glass animals, classified under the provisions of paragraph 218(f), Tariff Act of 1930, as modified by T.D. 51802 supplemented by T.D. 51898, and assessed with duty at 50 cents each, which are claimed to be dutiable under the same paragraph, as modified by T.D. 53865, supplemented by T.D. 53877, at 30 per centum ad valorem.

2. That the merchandise and issues are the same in all material respects to the merchandise and issues in *The Keepnews Co.* v. *United States*, Abstract 68922, the record in which case may be incorporated in the record herein.

3. That the protest is abandoned as to all other merchandise and all other claims * * *.

In *The Keepnews Co.* case, *supra*, colored glass articles in the form of fish, ducks, roosters, and pheasants were assessed with duty under paragraph 218(f) of the 1930 Tariff Act, as modified by T.D. 51802 and supplemented by T.D. 51898, on the theory that they were household articles and were, thereby, excepted from the reduced duty rates created by T.D. 53865, supplemented by T.D. 53877, which further modified paragraph 218(f) as follows:

All articles (not including table and kitchen articles and utensils) of every description not specially provided for, composed wholly or in chief value of glass, blown or partly blown in the mold or otherwise, or colored, cut, engraved, etched, frosted, gilded, ground (except such grinding as is necessary for fitting stoppers or for purposes other than ornamentation), painted, printed in any manner, sandblasted, silvered, stained, or decorated or ornamented in any manner, whether filled or unfilled or whether their contents be dutiable or free:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Other, valued not over $1.66⅔ each (except Christmas tree ornaments, household articles, and articles and utensils commercially known as bubble glass and produced otherwise than by automatic machine; and except articles and utensils blown or partly blown in the mold or otherwise and cut or engraved and valued at $1 or more each) _____ 30% ad val.

The evidence before this court in that case consisted of the testimony of one witness and a representative sample of the merchandise, and it was summarized in the opinion in the following manner:

The sole witness, who appeared herein, stated she is a bookkeeper and part-time sales lady in the employ of plaintiff. She supplied a sample of one of the items in controversy (invoice item YM–172), which she identified as a Venetian glass duck (plaintiff's exhibit 1). It consists of a plain glass base upon which is mounted, in vertical position, the form of a duck made of green colored glass. The overall height of the article is approximately 1 foot, and it weighs about 3 pounds. All of the other items in question are approximately of the same size and have the same type or kind of base. They differ only in the shape of the animal and the color of the glass.

The witness stated that plaintiff sells the items under consideration at wholesale to buyers for department stores and gift shops and that they are displayed in the china, glass, and gift departments of such establishments. On the matter of use, the witness testified that the articles in controversy are used in the household, as decorations, either on the mantlepiece or on a table.

Based upon this record, we sustained the collector's classification of the merchandise as household articles in paragraph 218(f), as modified, *supra*, and overruled the protest.

Plaintiff argues here, as it was argued in the incorporated case, that the classification of these glass animals is controlled by our

decision rendered in *M. Pressner & Co.* v. *United States*, 42 Cust. Ct. 354, Abstract 62984. The issue in that case involved the same provisions of the statute as are before us now. The merchandise, however, comprised glass animals measuring approximately 1 inch in height, delicate in construction, and weighing about an ounce. They were stipulated to be miniature glass animals chiefly used in the household on knickknack shelves. In reaching a conclusion supporting plaintiff's claim for classification under paragraph 218(f), as modified by T.D.'s 53865 and 53877, *supra*, at the reduced rate of 30 per centum ad valorem, we relied directly upon the legislative history behind the trade agreement (ANALYSIS OF PROTOCOL [INCLUDING SCHEDULES] FOR ACCESSION OF JAPAN–ANALYSIS OF RENEGOTIATIONS OF CERTAIN TARIFF CONCESSIONS–Department of State–Publication 5881–Commercial Policy Series 150–Released June, 1955) wherein it clearly appears that "miniature glass figures" were to be expressly included in the concessions granted. In the incorporated case, we distinguished the *Pressner* case on the ground that glass animal figures approximately 1 foot in height and 3 pounds in weight were not miniature glass figures.

In rearguing this issue, plaintiff maintains that the court failed to consider the dictionary definition of "miniature" wherein it clearly appears that the instant merchandise is within the common meaning of that term. Plaintiff has listed for our consideration the following definitions appearing in Webster's New International Dictionary, Second Edition (1957):

miniature, *adj.* Being, or represented, on a small scale; as, a *miniature* copy.

Syn. and Ant.—See SMALL.

small, *adj.* 1. Having little size compared with other things of the same kind; * * *.
Syn.—SMALL, LITTLE, DIMINUTIVE, TINY, MINUTE, MINIATURE. *Small* (opposed to *large*) and *little* (opposed to *big, great*) are often used without distinction. But SMALL (which is more frequently than *little* applied to number, quantity, amount, and the like) often suggests that which is less than the ordinary or the expected; LITTLE is more absolute; it may also (cf. GREAT) connote tenderness or pathos, which *small* rarely does; as, a *small* house; cf. a *little* house; a *small* (not *little*) attendance; a *little* boy; cf. the *small* boy; "Sleep, my *little* one" (*Tennyson*); her pathetic *little* smile. Both *small* and *little* may connote insignificance or pettiness; as, a matter of *small* (or *little*) moment; "Laugh at *small* fools and lash *small* knaves" (*Churchill*); "A foolish consistency is the hobgoblin of *little* minds" (*Emerson*). DIMINUTIVE is stronger than *small*, and commonly implies comparison; as, "the snug fireside in our own *diminutive* parlor" (*Cowper*); "The horses are so *diminutive* that they might be, with propriety, said to be Lilliputian" (*id.*). TINY is the familiar and colloquial, MINUTE, the exact, word for that which is extremely small; as "a little *tiny* boy" (*Shak.*);

(*Shak.*) ; "The new moon put forth a little diamond peak no bigger that . . . [the] *tiny* point of fairy scimitar" (*Keats*) ; a *minute* animalcule; "innumerable granules of extreme *minuteness*" (*Huxley*). That is MINIATURE which is on a very small scale; as, "a *miniature* creation" (*Gay*). See LESS; cf, PETTY, DWARF, CIRCUMSTANTIAL.

tiny, *adj.* Very small or diminutive; minute.

Plaintiff draws the conclusion from these definitions that the involved articles can properly be described as small or miniature "in the sense that they represent on a small scale the animals they portray."

Common meaning is, of course, a question of law and the court may well rely upon its own understanding of the term used. *United States* v. *National Carloading Corp., James S. Baker Import Co.*, 48 CCPA 70, C.A.D. 767; *United States* v. *John B. Stetson Co.*, 21 CCPA 3, T.D. 46319. This court in the *Keepnews* case, *supra*, did not *fail* to consider dictionary definitions, it *chose* not to consider them. As we concluded from an examination of the sample evidence before us in that case, we likewise conclude here, i.e., where the instant imports are nearly twelve times as high and many more times as heavy as articles (plaintiff's collective exhibit 1 in the *Pressner* case, *supra*) held to be miniature, they are obviously not miniature themselves.

In any event, we cannot subscribe to plaintiff's version of the meaning of the term "miniature" based upon dictionary definition. It seems abundantly clear from the definition cited above that "small" is somewhat like a generic term (opposed to large) and that diminutive, tiny, minute, and miniature are more exact degrees or species of that word. Thus, in this context, "miniature" is listed as that "which is on a *very* small scale" [emphasis supplied], and not simply, as plaintiff would have it, the same as that which is small in scale. Again, Webster's Dictionary of Synonyms (1951 edition) refines the generic "small" further into little, diminutive, petite, wee, tiny, teeny, weeny, minute, microscopic, and miniature, stating that—

* * * Miniature applies to what is complete in itself but is built, drawn, made, or the like, on a *very small scale*; * * * [emphasis supplied].

Furthermore, that which is granted the trade concession as an exception to household articles is not articles which are miniature in terms of the animals or things they portray, but miniature glass figures of animals or the things they portray. It is common knowledge that glass figures are generally much smaller than the actual, especially animate, objects they represent. The duck in plaintiff's exhibit 1 in the incorporated case may be on a small scale vis-a-vis the animal it portrays, but we are not prepared to find that it is on a very small scale vis-a-vis glass figures of ducks normally found about the household. Therefore, there being no adequate basis upon which to distin-

guish our holding in the *Keepnews* case, *supra*, the protest in this case will be overruled and judgment will be rendered accordingly.